# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4155-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

R.P.B.[1]

     Defendant-Appellant.

_____

Submitted November 9, 2021 – Decided December 8, 2021

Before Judges Hoffman and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 06-10-2344.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Special

---

[1] We use initials to identify defendant and the victims to protect the privacy of the victims. R. 1:38-3(d)(10).

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant R.P.B. appeals from a June 22, 2018 Law Division order denying the withdrawal of his guilty plea based on newly discovered evidence, without an evidentiary hearing. We affirm.

We recounted the underlying facts in our prior opinion. State v. R.P.B., No. A-0093-18 (App. Div. December 13, 2019) (R.P.B. I).

> In June 2006, defendant resided with his twelve-year-old son and two other children ages eleven and ten. While residing with the children he acted as their parent. Defendant failed to provide adequate food to the children and kept the house in a filthy, unkempt condition. Allegations surfaced that he had engaged in sexually assaulting and endangering the children and acting lewdly in their presence.

> A Monmouth County Grand Jury returned an indictment charging defendant with four counts of second-degree endangering the welfare of a child, N.J.S.A. 24-4(a) (counts one, two, six, and seven); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b) (counts three and four); and fourth-degree lewdness, N.J.S.A. 2C:14-4(b)(1) (count five).

> On December 11, 2006, defendant entered into a plea agreement with the State. During the plea hearing that day, the assistant prosecutor recited the terms of the plea agreement on the record. In exchange for his guilty plea to counts one, two and five, the State agreed to treat counts one and two as

third-degree offenses for sentencing purposes, and to recommend concurrent four-year flat sentences on counts one and two and a concurrent flat one-year sentence on count five. Defendant would be required to comply with Megan's Law and be placed on Parole Supervision for Life (PSL). The remaining counts would be dismissed. Trial counsel confirmed that the terms recited by the assistant prosecutor were correct.

. . . .

The trial court then requested trial counsel to establish a factual basis for defendant's plea. In response to counsel's questions, defendant admitted to residing with the three victims, all of whom were minors, and that he had the power to parent them. He then admitted he failed to provide adequate food to the children and kept the house in a filthy condition. Defendant also admitted that he displayed his genitals to the children and struck his penis against their clothing for his own sexual gratification. The court accepted defendant's guilty plea.

. . . .

Defendant was sentenced in accordance with the terms of the plea agreement to an aggregate four-year flat term, appropriate fines and penalties, required to comply with Megan's Law, and placed on [Parole Supervision for Life (PSL)]. He was awarded 307 days credit for time served and [58] days of gap time. Defendant did not appeal his conviction or sentence.

Defendant served his prison term and was released subject to Megan's Law and PSL, which he violated on several occasions, resulting in further charges, convictions, and incarceration.

[R.P.B. I (slip op. at 2-8) (footnote omitted).]

In July 2016, defendant received a notarized letter from his son, recanting his allegations that defendant had sexual abused him. The letter stated, in pertinent part:

> I would like to state that I am writing this letter on my own free will, no one is forcing me. The purpose of this letter is to hopefully keep my father, [R.P.B.] from being incarcerated any longer. At the age of [eleven] I made allegations to a detective and the [S]tate that my father was sexually abusing me. These allegations are false. Sadly and regretfully I lied in order to be removed from my father['s] care and placed with my uncle [J.B.]. I lied because my father was abusing drugs and at the time he scared me while under the influence. At the time he was not being a good father. He would get angry more often and sometimes hit me. Which just scared me more. But that is all he is guilty of. He would never do anything sexual to me or anyone else for that matter. While living in my father['s] care things did not improve. He continued his use of drugs and always arguing with his girlfriend. I was not happy and felt as though I was not being heard. So I made false allegations knowing [the Division of Youth and Family Services] would have to remove me. Yes I was young but I learned at a young age having gone through the system so much that these lies would have me removed from my father['s] care. At the time however being so young, I didn't realize how severe the consequences would be. He has spent most of his life since incarcerated for a crime he did not commit . . . . Having grown up I realize how much I need my dad and how wrong I was to make such allegations against him.
>
> [Id. at 8-9.]

In February 2017, defendant filed a pro se petition for PCR, claiming ineffective assistance of counsel. Id. at 9. Defendant alleged:

> trial counsel failed to listen to or argue the facts pertaining to his case and "to reverse [the] plea agreement." Defendant also alleged newly discovered evidence was received in July 2016. The petition further alleged that defendant's "reason for accepting the plea offer was to protect [his] girlfriend of [five] years at the time. She was threatening her life if she did not get released soon." Defendant asserted that when he told this to his trial counsel, "he did not want to hear about it."
>
> PCR counsel was appointed to represent defendant and submitted an amended petition and supporting certification of defendant. Defendant claimed trial counsel was ineffective because he failed to advise him of the penal and collateral consequences of his plea. In his certification, defendant stated his trial counsel told him the plea agreement "would finalize [his] legal matter in Monmouth County and no other action would be taken as a result of [the] plea." He further stated that trial counsel "refused to do any investigation into [his] case even though [he] protested [his] innocence."
>
> Defendant claimed he "did not want to take the plea as [he] did not perform any criminal sexual acts toward the victims and only took the plea to protect the victims and [his] girlfriend who was residing with [him] at the time." He admitted, however, that he "was guilty of endangering the children for having drugs in the home and for keeping a very dirty and unkempt home not suitable for children."

Defendant stated his trial counsel "encouraged [him] to plead guilty as the plea deal was to [his] benefit." Defendant indicated he pled guilty because he was "misinformed that there was no other way to prove [he] had not committed the alleged acts." He stated he filed his petition after receiving the letter from his son in 2016, recanting the sexual assault allegations.

. . . .

The PCR court issued a June 22, 2018 order and fifteen-page statement of reasons denying PCR without an evidentiary hearing.

. . . .

The court concluded the newly discovered evidence did not relate to defendant's claim of ineffective assistance of counsel during the plea process. The judge "fail[ed] to see how a recantation letter written on June 29, 2016, almost ten years after defendant pled guilty, could possibly be relevant to defense counsel's actions during the plea process a decade earlier." The judge found "[i]t is not excusable neglect to wait nine years to file a petition . . . based on counsel's actions during the plea process merely because a victim wrote a recantation letter a decade later that is wholly irrelevant to defendant's grounds for [PCR]." The judge found defendant failed to establish either excusable neglect or fundamental injustice, and ruled the petition time-barred.

. . . .

Finally, the judge briefly addressed defendant's claim of newly discovered evidence, consisting of a recantation letter by one of the victims. The judge

6

concluded the issue was not properly raised as part of an ineffective assistance of counsel PCR claim and not properly before the court.

The judge concluded defendant failed to establish a prima facie case of ineffective assistance of counsel and thus was not entitled to an evidentiary hearing or PCR.

[Id. at 9-15.]

Defendant appealed, arguing he was denied the effective assistance of trial counsel and PCR counsel. Id. at 15-16. We affirmed the rejection of defendant's claims that trial counsel was ineffective, finding the claim was time-barred and substantively without merit. Id. at 16-19.

As to defendant's claim that his son's statements constituted newly discovered evidence that warranted a new trial, we determined that "the PCR court did not apply the Carter[2] criteria to determine if the newly discovered evidence warranted a new trial. Instead, the PCR court summarily determined the issue was not properly before it and denied the petition without considering the merits." R.P.B. I (slip op. at 21). We "remand[ed] the issue [of] withdrawal of the plea based on newly discovered evidence for a decision on the merits." Id. at 22. We left it to the sound discretion of the remand court "to determine whether to grant an evidentiary hearing and whether to require

---

[2] State v. Carter, 85 N.J. 300 (1981)

or permit amended or supplemental submissions on the newly discovered evidence issue." Ibid.

The remand court heard oral argument and issued a written decision denying defendant's application to withdraw his guilty plea. The court concluded defendant did not satisfy the criteria adopted in Carter, 85 N.J. at 314, and that an evidentiary hearing was not warranted.

The court engaged in the following analysis:

> C.L. is one of three victims in this case. In 2006, C.L., writing for himself and on behalf of his brother, L.M., and C.M., writing for herself, all provided written statements detailing defendant's abuse. All three statements include allegations of sexual abuse. To date, only C.L. has recanted his prior allegations against defendant.
>
> Under Carter's first prong, the newly discovered evidence must be material, and not merely cumulative, impeaching or contradictory, C.L.'s recantation does not satisfy this requirement. If C.L. 's 2006 statement had constituted the entirety of the allegations against defendant, his 2016 recantation may have been material evidence that could cast doubt on the conviction. However, the other two victims' statements from 2006 corroborate the allegations of sexual abuse that C.L. now recants. C.L.'s 2016 letter, standing alone, is merely contradictory, and thus does not satisfy Carter's first prong.
>
> The court also finds on the motion record that the second prong of the Carter test cannot be satisfied. Although this evidence was apparently discovered

since defendant's guilty plea in 2006, defendant offers nothing to explain why such evidence could not have been discovered earlier than 2016. The three victims' allegations were investigated by law enforcement and D.Y.F.S., with no indication in the record that there was any doubt as to the veracity of the victims' allegations. Further, according to the Pre-Sentence Report prepared by Probation, L.M. and C.M. suffered recurring nightmares, underwent intensive therapy, and suffered from post-traumatic stress syndrome as a result of defendant's abuse. Presentence Report 2 (Exhibit E of defendant's amended PCR petition). These facts further undermine the veracity of C.L.'s recantation, already "regarded as 'suspect and untrustworthy.'" [State v. Ways, 180 N.J. 171, 197 (2004)] (citing [State v. Carter, 69 N.J. 420, 427 (1976)]).

Even if defendant could not have discovered this evidence at any time prior to this petition for post-conviction relief, the court does not find that defendant's newly discovered evidence was "of the sort that would probably change the jury's verdict if a new trial were granted," Carter, 85 N.J. at 314, or would "cast[] doubt on the justice of defendant's conviction." [State v. Dickerson, 268 N.J. Super. 33, 36 (App. Div. 1993)]. As stated above, there are two other victims in this case who also accused defendant of sexual abuse and have not recanted their allegations. The psychological trauma suffered and ensuing treatment of the other two victims weighs heavily against any possibility that there would be a different outcome; that is to say that defendant would not have pled guilty, or been found guilty by a jury, on the weight of L.M. and C.M.'s testimony alone. As such, defendant has failed to satisfy Carter's third prong.

Because the PCR record demonstrates that Carter's three-prong test cannot be satisfied, the court concludes that there is no basis to conduct an evidentiary hearing, and that no supplemental submissions will shed any new light on defendant's entitlement to a new trial based on newly discovered evidence, consisting solely of the statements of his son C.L. as the Appellate Division has noted.

This appeal followed. Defendant argues:

THE PCR COURT ERRED IN DENYING [DEFENDANT] AN EVIDENTIARY HEARING AND THE OPPORTUNITY TO ADDRESS STATE V. CARTER, 85 N.J. 300 (1981) BEFORE RENDERING ITS DECISION REGARDING THE NEWLY DISCOVERED EVIDENCE, AS [DEFENDANT] MUST BE ALLOWED TO PROVIDE THE PCR COURT WITH ARGUMENTS SUPPORTING C.L.'S RECANTATION OF SEXUAL ABUSE, WHICH WARRANT A NEW TRIAL.

Defendant argues that newly discovered evidence—C.L.'s statement recanting his prior allegations that defendant sexually abused him—warrants an evidentiary hearing on his claim that he should be permitted to withdraw his plea. We are unpersuaded.

Newly discovered evidence that would require a new trial must be "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's

verdict if a new trial were granted." Carter, 85 N.J. at 314 (citing State v. Artis, 36 N.J. 538, 541 (1962)). All three prongs must be satisfied before a defendant will obtain a new trial. Ways, 180 N.J. at 187 (citations omitted).

"Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Id. at 187-88. "Courts generally regard recantation testimony as suspect and untrustworthy." Carter, 69 N.J. at 427 (citing 58 Am. Jur. 2d New Trial § 175 (1976)).

Motions for a new trial based on newly discovered evidence are "not favored and should be granted with caution by a trial court since [they] disrupt[] the judicial process." State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (citing State v. Haines, 20 N.J. 438, 443 (1956)). Such motions are "addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion." State v. Puchalski, 45 N.J. 97, 107 (1965) (quoting Artis, 36 N.J. at 541); accord State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). That said, a "reviewing court must engage in a thorough, fact-

sensitive analysis to determine whether the newly discovered evidence would probably make a difference to the jury." Ways, 180 N.J. at 191.

The mere raising of a claim of newly discovered evidence does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant an evidentiary hearing only if the defendant has presented a prima facie claim of newly discovered evidence warranting a new trial or withdrawal of a guilty plea under the Carter test, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).

We review a judge's decision to deny PCR without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992). The same standard of review applies when a defendant files a petition for PCR seeking either a new trial or to withdraw a guilty plea based on newly discovered evidence. See State v. Hooper, 459 N.J. Super. 157, 180 (App. Div. 2019) (stating a reverse of a denial of a motion to withdraw a guilty plea occurs if the trial court abused its discretion).

Considering defendant's contentions in light of the record and the applicable law, we affirm the denial of defendant's application to withdraw his

guilty plea based on newly discovered evidence substantially for the reasons expressed in the remand court's written decision. We discern no abuse of discretion or legal error in the judge's consideration of the issue, or in his decision to deny the application without an evidentiary hearing.

Recantation evidence that merely asserts that prior testimony or statements are false does not satisfy the materiality prong of the Carter test. In addition, C.L.'s statement to police in 2006 detailing defendant's abuse was corroborated by the contemporaneous statements of the other two victims. Moreover, C.L.'s recantation did not undermine the evidence of defendant's abuse of the other two victims, who did not recant their allegations. Considering the totality of the circumstances, including the unreliable nature of recantations, we are satisfied that C.L.'s recantation at this late date does not satisfy the Carter criteria. See State v. Buonadonna, 122 N.J. 22, 51 (1991) (finding "sketchy" evidence insufficient to warrant a new trial).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-4155-19