**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2222-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RONALD SANTIAGO, JR.,
a/k/a RONALD B. SANTIAGO,
RONALD SANTIAGO,
RONALD JR., and RONALD
SANTIAGOJR.,

    Defendant-Appellant.

_____

Submitted September 16, 2025 – Decided September 24, 2025

Before Judges Rose and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 19-08-0538.

Jennifer N. Sellitti, Public Defender, attorney for appellant (James D. O'Kelly, Designated Counsel, on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ronald Santiago, Jr. appeals from a December 19, 2023 order denying his post-conviction relief (PCR) petition following a hearing on his claim that trial counsel failed to effectively review the case with him. Defendant also appeals from an October 3, 2023 order denying PCR without an evidentiary hearing on his remaining claims. For the reasons that follow, we affirm both orders.

I.

We summarize the pertinent facts and events from the record provided on appeal. Around 2:56 a.m., on June 4, 2019, Elizabeth Police Department (EPD) officers arrived at an apartment complex in Elizabeth following a report of a shooting. Upon arrival, police discovered the victim, Alphonso James, lying near the complex's pool with multiple gunshot wounds. Shortly thereafter, James was pronounced dead.

Detectives assigned to the Union County Prosecutor's Office (UCPO) responded to the scene and canvassed the area for witnesses and surveillance videos. Around 8:00 a.m., police saw a large crowd in the complex gathered around defendant inquiring why he "d[id] it." Defendant responded, "You know

why he got it . . . he got it for snitching."  Defendant was arrested at EPD headquarters.[1]

While in custody, defendant asked to speak to the detectives about the investigation.  Around 10:57 a.m., police transported defendant to the UCPO, where he provided a recorded statement.  Although defendant admitted he ingested Xanax around midnight, defendant stated he was "real clear minded."  Defendant denied drugs, alcohol, or medication impaired his faculties.

In his Mirandized[2] statement, defendant admitted he shot and killed James.  Defendant said, under the guise of purchasing drugs, he lured James to a "blind spot" to avoid the complex's surveillance cameras.  Defendant admitted after shooting James, he stole his money and drugs then proceeded to his girlfriend's apartment where he changed his clothing.  After securing a warrant to search the apartment, police seized a black hooded sweatshirt, which was similar to the clothing defendant's girlfriend described when she saw him before

---

[1]  As the PCR judge noted in his decision, it is unclear whether defendant was placed in custody regarding this incident or for an outstanding municipal warrant.  However, the circumstances regarding defendant's custody status are not at issue on appeal.

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-2222-23

the shooting. Forensic analysis of the clothing and torn currency, also seized from the apartment, confirmed the presence of defendant's and James's DNA.

In August 2019, defendant was charged in a five-count Union County indictment with: first-degree murder, N.J.S.A. 2C:1-3(a)(1) and (2); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree robbery, N.J.S.A. 2C:15-1(a)(1) and (3); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).

The State thereafter moved for an N.J.R.E. 104(c) hearing to determine the admissibility of defendant's unrecorded oral statements to the crowd at the scene, recorded statement to police, and recorded jail telephone conversations. Defendant also moved to suppress his statements. Defendant claimed police lacked probable cause to arrest him, rendering his recorded statement inadmissible as fruit of the poisonous tree. Pertinent to this appeal, defendant also argued his Miranda waiver was invalid in view of his Xanax ingestion before he gave his statement to police.

The trial judge denied defendant's motion. Referencing defendant's recorded statement[3] in his comprehensive written decision, the judge determined defendant "did not appear exhausted or in any discomfort during the questions." Instead, the judge found defendant "appeared eager to speak to the detectives and eager to admit to the killing." In rejecting trial counsel's argument that defendant's Xanax use earlier that morning impaired his ability to waive his Miranda rights, the judge reasoned "[d]efendant's words and actions do not support that argument as [d]efendant expressly denied such an effect and appeared objectively 'sober' during the questioning." The judge additionally found "[d]efendant was alert enough to provide his pedigree information, describe his actions in detail and decline to answer questions."

In October 2021, defendant pled guilty to an amended charge of first-degree aggravated manslaughter and possession of a weapon for an unlawful purpose as charged. Pursuant to the negotiated plea agreement, defendant was sentenced to an aggregate prison term of twenty-five years, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on the manslaughter conviction. Defendant did not appeal from the December 15, 2021 judgment of conviction.

---

[3] Defendant's recorded statement was not provided on appeal but the transcript provided to the trial judge was included in defendant's appellate appendix.

In October 2022, defendant filed a timely pro se PCR petition. Assigned counsel thereafter filed an amended petition and brief asserting defendant was intoxicated when he spoke to police and, as such, trial counsel was ineffective for failing to move to suppress defendant's recorded statement on that basis.[4] Asserting trial counsel "could have bolstered a diminished capacity defense and a pathological intoxication defense," PCR counsel further argued trial counsel was deficient for failing to retain an expert witness to testify regarding defendant's level of intoxication. PCR counsel also argued trial counsel was ineffective for failing to raise several mitigating factors during sentencing.

After the State provided additional discovery, PCR counsel filed a supplemental letter acknowledging trial counsel filed a suppression motion but argued trial counsel failed to include a sworn statement of defendant clarifying the approximate time he consumed Xanax and the amount ingested. The supplemental letter also acknowledged trial counsel had retained an expert report, which noted defendant "ingest[ed] large quantities of alcohol and multiple illicit substances" on the night of the shooting.

---

[4] Defendant's pro se petition provided on appeal is illegible. We glean from the record assigned counsel reiterated defendant's pro se claims in his amended petition and brief.

A-2222-23

Following argument on defendant's petition, the PCR judge, who presided over the trial court proceedings, issued an order granting an evidentiary hearing on defendant's claim that trial counsel ineffectively reviewed the case with defendant and denied all other claims. In his October 3, 2023 written decision accompanying the order, the judge determined defendant's suppression motion and sentencing arguments were procedurally barred because those issues could have been raised on direct appeal.

Nonetheless, the PCR judge found the record contradicted defendant's claim that trial counsel was ineffective for failing to retain an expert. The judge also considered defendant's sentencing argument under mitigating factors two, four, seven, eight, nine, twelve, and fourteen. See N.J.S.A. 2C:44-1(b) (2), (4), (7), (8), (9), (12), and (14). Finding these mitigating factors inapplicable, the judge rejected defendant's argument that trial counsel was ineffective for failing to argue these factors at sentencing. The judge reasoned, "PCR counsel fail[ed] to argue how each factor would have applied and how the factors, when considered in the aggregate, would have altered the outcome of the sentence on a negotiated plea for [a]ggravated [m]anslaughter." The PCR judge therefore found defendant failed to establish a prima facie case of ineffective assistance of counsel on these claims.

On December 15, 2023, the PCR judge conducted an evidentiary hearing pursuant to his October 3, 2023 order. The State presented the testimony of trial counsel. Defendant testified on his own behalf.

Trial counsel testified he met with defendant in person and telephonically, and maintained detailed contemporaneous timekeeping records using billing software. The records showed trial counsel met with defendant in jail for approximately two hours on June 21, 2019. Thereafter, in September 2019, December 2020, February 2021, and March 2021, trial counsel met with defendant for about one to one-and-one-half hours. Trial counsel testified during these meetings he discussed plea negotiations, reviewed discovery materials, advised defendant about the strengths and weaknesses of the State's case – including defendant's confession and the State's DNA evidence – and prepared a mitigation memorandum. Trial counsel testified his professional relationship with defendant "was always very good." Trial counsel asserted there were no language barriers and defendant freely asked questions which he answered.

Conversely, defendant testified his meetings with trial counsel at the courthouse were brief, usually lasting no longer than thirty minutes. During these meetings, defendant primarily signed paperwork or discussed motions and

case developments with trial counsel.  Defendant acknowledged at the jail some meetings lasted forty-five minutes to one hour but he did not remember the details and did not consider these meetings substantial.  Defendant said he did not believe trial counsel spent enough time on his defense, only filed one motion, and ignored his requests to file additional motions.  Defendant claimed he felt rushed through the process and inadequately represented.  When shown the transcript of his guilty plea, defendant confirmed its accuracy and acknowledged he told the trial court he had no communication problems with his lawyer.

On December 19, 2023, the PCR judge issued a written decision and memorializing order, denying defendant's petition.  The judge credited trial counsel's testimony, finding it supported by the record.  Although the judge "accept[ed] the sincerity of [defendant]'s feelings for purposes of th[e] motion," the judge ultimately found defendant's complaints were general and unsupported as he could not demonstrate that, but for trial counsel's alleged errors, the outcome would have been different, as required under Strickland.[5]  The PCR judge concluded trial counsel's performance did not fall below the required

_____

[5]  Strickland v. Washington, 466 U.S. 668, 687 (1984) (requiring a defendant seeking PCR on ineffective assistance of counsel grounds demonstrate:  (1) the particular manner in which counsel's performance was deficient; and (2) the deficiency prejudiced defendant's right to a fair trial); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

A-2222-23

standard of reasonable competence. Defendant now appeals, raising the following points for our consideration:

POINT I

DEFENDANT IS ENTITLED TO PCR BECAUSE TRIAL COUNSEL FAILED TO COMPLETE A CASE INVESTIGATION WHICH PREVENTED COUNSEL FROM MEANINGFULLY PREPARING AND ARGUING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS DEFENDANT MADE TO THE POLICE.

POINT II

AT THE EVIDENTIARY HEARING, THE PCR COURT ERRONEOUSLY PREVENTED DEFENDANT FROM ESTABLISHING HIS PCR CLAIM THAT TRIAL COUNSEL FAILED TO REGULARLY MEET WITH HIM TO PREPARE A DEFENSE AND MEANINGFULLY PREPARE FOR TRIAL OR PLEA NEGOTIATIONS.

POINT III

DEFENDANT IS ENTITLED TO PCR BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE APPLICABLE MITIGATING FACTORS AT THE SENTENCING HEARING.

II.

We have considered defendant's contentions in view of the governing law and conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). Pursuant to the applicable standards of review

10

governing the orders under review, we discern no reason to disturb the judge's decisions. See State v. Gideon, 244 N.J. 538, 551 (2021) (recognizing an appellate court reviews a PCR order following a testimonial hearing for an abuse of discretion); State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) (holding "where the court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record"); see also State v. Nash, 212 N.J. 518, 540-41 (2013) (recognizing appellate courts review any legal conclusions of the PCR court de novo). We add only we part company with the PCR judge's finding that defendant's PCR claims, reprised on appeal in points I and III, were procedurally barred under Rule 3:22-4(a)[6] because they could have been brought on direct appeal.

In his PCR petition, defendant argued, in part, trial counsel was ineffective for failing to retain an expert before the suppression hearing and failing to include an affidavit in support of his suppression motion indicating defendant consumed three or four Xanax pills prior to the interview. Unless

---

[6] Pursuant to Rule 3:22-4(a), "[a]ny ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule" subject to certain exceptions.

trial counsel's strategy was readily apparent from the record, see State v. Pagan, 378 N.J. Super. 549, 557 (App. Div. 2005) (dismissing an ineffective assistance of counsel claim in a PCR petition because it was previously addressed on direct appeal, where the record was sufficient to decide the issue), we likely would not have considered his effectiveness concerning the suppression motion, see State v. McQuaid, 147 N.J. 464, 484 (1997) (recognizing "claims that differ from those asserted below will be heard on PCR"). We therefore conclude defendant's ineffective assistance of counsel claim, raised in point I, was not procedurally barred under Rule 3:22-4(a).

Turning to the merits, we recognize the parties dispute whether trial counsel's failure to retain a toxicology expert before the motion to suppress was properly raised before the PCR court. Defendant argues he raised this precise claim before the PCR court, as reflected in PCR counsel's submission, oral argument, and the record. The State counters, although defendant eventually acknowledged trial counsel filed a motion to suppress and retained an expert, there was no direct argument or supporting evidence submitted on PCR asserting those failures constituted ineffective assistance of counsel.

Assuming without deciding the claim was properly raised, we have considered de novo the merits of defendant's argument raised in point I and

12

conclude his claims are unavailing. In his brief supporting defendant's suppression motion, trial counsel argued defendant "was clearly incapable of communicating accurately with the interviewing detectives" and "it [wa]s patently obvious that [defendant wa]s highly intoxicated while speaking with" the officers. Having reviewed the recording of the statement, the trial judge – who, as noted, later decided the present PCR application – rejected defendant's argument. The judge reasoned:

> Defendant's words and actions do not support that argument as [d]efendant expressly denied such an effect and appeared objectively 'sober' during the questioning. Indeed, [d]efendant was alert enough to provide his pedigree information, describe his actions in detail and decline to answer questions, i.e., questions about the location of his girlfriend's house.

Even if trial counsel's failure to retain a toxicology expert prior to the suppression motion satisfied Strickland's first prong, we conclude, based on the trial judge's findings after viewing the video, defendant did not satisfy Strickland's second prong. Trial counsel made essentially the same argument stated in the expert report – defendant was too intoxicated to "knowingly, voluntarily, and intelligently" waive his Miranda rights. Defendant does not articulate how the expert report would have altered the trial judge's decision on the suppression motion or his decision to enter a guilty plea. See State v. Nuñez-

13

Valdéz, 200 N.J. 129, 139 (2009) (holding to set aside a guilty plea based on ineffective assistance of counsel, a defendant must demonstrate "(i) counsel's assistance was not within the range of competence demanded of attorneys in criminal cases; and (ii) that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial" (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)) (internal quotation marks omitted)).

Regarding defendant's sentencing claims raised in point III, we acknowledge "the failure to present mitigating evidence or argue for mitigating factors" may establish ineffective assistance of counsel. See State v. Hess, 207 N.J. 123, 154 (2011). Here, however, the PCR judge astutely analyzed and thoroughly explained why the mitigating factors were inapplicable. We therefore conclude defendant failed to satisfy Strickland's second prong.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2222-23